UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES ELMER SHAW, | 4:22-CV-04054-KES |
| Plaintiff, | |
| vs. | 1915A SCREENING |
| KELLY WASKO, individual and official capacity; DAN SULLIVAN, individual and official capacity; BRENT FLUKE, individual and official capacity; TROY PONTO, individual and official capacity; KARL KARBERG, individual and official capacity; REBECCA SCHIEFFER, individual and official capacity; JESSICA COOK, individual and official capacity; JOHN BENTING, individual and official capacity; ALEJANDRO REYES, individual and official capacity; TAMMY MERTENS-JONES, individual and official capacity; BRIAN FOLEY, individual and official capacity; CRAIG MOUSEL, individual and official capacity; SAM BADURE, individual and official capacity; CODY HANSON, individual and official capacity; SETH HUGHES, individual and official capacity; TE ARCHAMBEAU, individual and official capacity; DERICK EKREN, individual and official capacity; JAMIE ZOSS, individual and official capacity; E REMFERT, individual and official capacity; ERIC TIMMERMAN, individual and official capacity; KELLY TJEERDSMA, individual and official capacity; LEE KAUFENBERG, individual and official capacity; ED LOUIE, individual and official capacity; JERAME LARSON, individual and official capacity; NICK ANDERSON, individual and official capacity; JOEY | |

GASTONGUAY, individual and official capacity; BERGMAN, individual and official capacity; WADE EVANS WARNTJES, individual and official capacity; THE DOC and Unknown DOC Agents, Administrators and employees in their individual and official capacity; MARLIN'S INC., Unknown Catering Owner(s), Manager(s) in their individual and official capacity d/b/a CMB Management d/b/a/ Summit Food Services; GLOBAL TELLINK CORPORATION, Unknown Owner(s), Manager(s), Employees and/or Representative(s) in their individual and official capacity; BUREAU OF INFORMATION AND TELECOMMUNICATIONS, Unknown Owner(s), Manager(s), Employee(s) and/or Representative(s) in their individual and official capacity; SECRETARY OF HEALTH, (Name Unknown), individual and official capacity; DEPARTMENT OF HEALTH, Unknown Directors and/or Officers in their individual and official capacity; CORRECTIONAL HEALTH SERVICES, Unknown Employees in their individual and official capacity; MARY CARPENTER, M.D., individual and official capacity; EUGENE R. REGIER, M.D., individual and official capacity; SHAMIM SULTANA, M.D., individual and official capacity; MELVIN WALLINGA, M.D., individual and official capacity; DANYA KLAWITTER, individual and official capacity; SD BOARD OF PARDONS AND PAROLES, Unknown Agents and/or Members in their individual and official capacity; MIKE LEIDHOLT, individual capacity; DENNY KAEMINGK, individual capacity; DAREN YOUNG, individual capacity; JENNIFER DRIESKE, individual capacity; JOSH KLEMIK,

| individual and official capacity; ANGELA PECHOUS, individual and official capacity; DOUG CLARK, individual capacity; TIM REISCH, individual capacity,<br><br>                    Defendants. | |
|---|---|

Plaintiff, James Elmer Shaw, an inmate at the South Dakota State Penitentiary, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. This court granted Shaw leave to proceed in forma pauperis and ordered him to pay an initial filing fee. Docket 6. Shaw timely paid his filing fee on May 25, 2022. This court will now screen Shaw's complaint under 28 U.S.C. § 1915A.

## I.     1915A Screening

### A.     Factual Background

The facts alleged in Shaw's complaint are: that State Penitentiary officials, as well as officials at the Mike Durfee State Prison where Shaw was previously incarcerated, have violated several of Shaw's rights relating to the practice of his religion. Docket 1 ¶¶ 1-2. Shaw sues all individual defendants in their individual and official capacities, except for Mike Leidholt, Denny

Kaemingk, Darin Young,[1] Jennifer Dreiske,[2] Doug Clark,[3] and Tim Reisch,[4] who are sued in their individual capacities only.[5] *See id.* ¶ 51. Although Shaw indicates specific actions taken by individual defendants throughout his complaint, he also makes allegations against "all defendants" and states that "[a]ll defendants are hereby sued jointly and severally, for those acts and omissions described fully infra and as joint tort feasures [sic] [.]" *See id.* (citation omitted). Thus, this court construes his complaint as bringing all claims against all defendants. *See id.* Shaw seeks declaratory relief, several

---

[1] Shaw names Daren Young as a defendant in this lawsuit. Docket 1 ¶ 47. The actual name of the former State Penitentiary warden is Darin Young. When referring to Young by his full name, this court will use Young's actual name.

[2] Shaw names Jennifer Drieske as a defendant in this lawsuit. Docket 1 ¶ 48. The actual name of the former State Penitentiary official is Jennifer Dreiske. This court will use Dreiske's actual name.

[3] Although Shaw does not name Doug Clark as a defendant in this lawsuit, he references allegations against Clark in a footnote in the section of the complaint in which he names defendants, and he also makes factual allegations against Clark. *See* Docket 1 ¶¶ 4 n.2, 145.

[4] Although Shaw does not name Tim Reisch as a defendant in this lawsuit, he makes factual allegations against Reisch. *See* Docket 1 ¶ 145.

[5] Leidholt, Kaemingk, and Reisch are former South Dakota Secretaries of Corrections, Young and Clark are former South Dakota State Penitentiary Wardens, and Jennifer Dreiske is a former South Dakota State Penitentiary official. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). The current Secretary of Corrections is Kellie Wasko, and the current South Dakota State Penitentiary Warden is Dan Sullivan. Shaw alleges that Troy Ponto is the current State Penitentiary official who has replaced Dreiske. Docket 1 ¶ 4 n.2. Wasko is automatically substituted for Leidholt, Kaemingk, and Reisch; Sullivan is automatically substituted for Young and Clark; and Ponto is automatically substituted for Dreiske for official capacity claims. Thus, the remaining claims against Leidholt, Kaemingk, Reisch, Young, Clark, and Dreiske are in their individual capacities only.

4

forms of injunctive relief, money damages, and "[a]ny other relief this Court may deem just and proper." *Id.* ¶¶ 374-378.

### 1.    **Breach of Contract**

Shaw is a follower of Dorcha Cośan ("DC"), which he describes as "a sect or denomination of the Wiccan faith." *Id.* ¶ 169. Shaw claims that his religious beliefs are sincerely held. *Id.* ¶ 170. He claims that his religion requires him to make a geise, or oath, that binds him "to do or not do specific acts." *Id.* ¶ 176(b). He also claims that "[f]or a DC member to make and then break a geise could cause or bring horrible misfortunes of divine retribution, even the possibility of death," and that "[w]hen a DC member makes and keeps their geise, that member will attain Godhood or Goddess Hood." *Id.* Shaw describes attaining Godhood as "his ultimate religious goal[.]" *Id.* ¶ 178.

Shaw has previously filed a civil rights lawsuit pertaining to his religious practices while in state custody. *See id.* ¶ 57. Shaw alleges that this lawsuit ended when Shaw and the DOC signed a settlement agreement and release of claims. *Id.* ¶ 58. He alleges that this settlement agreement allowed him to access and possess religious materials, including whole magazines and standalone pages from magazines, and other religious materials. *See id.* ¶¶ 68-69, 72. He alleges that this settlement agreement was "obtained by deceit" on the part of DOC officials who "submitted perjured testimony" to this court. *Id.* ¶¶ 58-59. Shaw specifically alleges that former State Penitentiary Warden Young promised to allow him to practice his religion if he entered into the

settlement agreement and that he agreed to settle the case under duress to end retaliation by DOC officials. *See id.* ¶ 63.

Shaw claims that defendants have breached the settlement agreement in several ways. *See, e.g., id.* ¶¶ 68-70, 73, 75-79, 81-82, 84-85, 90-98. He claims that defendants led him to believe that he most of the magazines in dispute and over 100 standalone pages from magazines would be accessible to him if he agreed to settle his lawsuit. *Id.* ¶¶ 68-69. He also claims that Young promised him that Young would "personally make an effort to see that [Shaw's] religion was recognized and some of [Shaw's Project Applications would be] approved" if he settled the lawsuit, but if he chose not to settle the lawsuit, he would be "transferred to New Jersey or New Mexico, where there are not many white guys." *Id.* ¶ 73 (internal quotation omitted). Shaw alleges that he signed the settlement agreement to prevent a retaliatory transfer. *Id.* ¶ 74. He alleges that after signing the agreement, he learned there were only ten magazines and eleven standalone pages in total. *Id.* ¶ 75. He also alleges that John Benting then told him that six of the ten magazines were rejected by Wade Evans Warntjes and Tammy Mertens-Jones because each contained a single image that violated the DOC pornography policy. *Id.* ¶ 76.

Shaw alleges that Benting also told him that two of the six rejected magazines would be thrown out and the other four would be placed in a viewing room file. *Id.* ¶ 77. He alleges that the settlement agreement made no reference to a viewing room file, that these magazines were educational and therefore fell under an exemption to the DOC policy, and that any offensive

6

images could be blacked out because offensive images in a tarot card deck and religious book, that were handled under the settlement agreement, were similarly blacked out. *Id.* ¶ 78. He also alleges that Benting refused these requests and refused to save the rejected items for appeal and for legal proceedings. *Id.* ¶¶ 79-80.

Shaw states that he was deceived into believing that he could permanently keep the tarot card deck and religious book in his cell once the offensive images were blocked out as part of his settlement and that all acts of retaliation by DOC officials would cease when he agreed to settle his case. *Id.* ¶¶ 82-84. He states that "retaliation intensified" after the settlement. *Id.* ¶ 85. He also states that he was told shortly after the settlement that DC was now recognized by the State Penitentiary but that his religious practice was limited to "standing outside for an hour, two times a week." *Id.* ¶ 90. Shaw claims that a Sacred Circle, a fire pit, a sauna, or the ability to celebrate religious observances with ritual and feast foods, as required by DC, were not allowed by Mertens-Jones, despite Young's promises that he could engage in these practices. *Id.* ¶¶ 90, 92. He claims that he was told that he needed a diabetic diet and therefore could not have his religious diet. *Id.* ¶ 91. Shaw alleges that Mertens-Jones then began telling Muslim inmates that their religious diet was discontinued because of Shaw's grievances and litigations. *Id.* ¶ 95. He alleges that Mertens-Jones told Native American inmates that their pow-wow and sweat lodge privileges were at risk if he continued filing grievances and lawsuits. *Id.* ¶ 96. He also alleges that Mertens-Jones and Craig Mousel

unlawfully censored his mail on the grounds that it was sexually explicit and that any nudity contained within it was medical, educational, or anthropological content allowed under DOC policy. *Id.* ¶¶ 97-98.

Shaw claims that he had an altercation with another inmate because of Mertens-Jones's actions. *Id.* ¶ 115. He claims that he was placed in the Special Housing Unit ("SHU") as a result of this altercation, where he engaged in a hunger strike to adhere to his religious dietary beliefs. *Id.* ¶¶ 116-118. He also claims that he fell, hit his head, and lay there while other inmates called for help for over an hour. *Id.* ¶ 120. Shaw alleges that he eventually was taken to the hospital, diagnosed with diabetic ketoacidosis, and hospitalized for three days. *Id.* ¶ 121. He alleges that he returned to the State Penitentiary, where Troy Ponto, Jessica Cook, and Warntjes falsified documents to ensure that Shaw would be placed in Restrictive Housing ("RH") after a disciplinary hearing regarding his altercation. *Id.* ¶¶ 128-30.

Shaw alleges that Unit Manager Sam Badure targeted his cell for weekly searches, spending 10 to 20 minutes there to go through his legal work and take his property, even though a walkthrough of an inmate's cell normally takes less than a minute. *Id.* ¶ 111. He alleges that this persisted for weeks and was retaliation for his grievances and litigation. *Id.* ¶ 112. He also alleges that his grievances requesting that camera footage of these actions be preserved for litigation purposes went unanswered. *Id.* ¶ 113.

Shaw states that Seth Hughes and Eric Timmerman denied him his religious book, tarot card deck, magazines, and standalone magazine pages

that he was promised in his settlement agreement while he was in the SHU and RH. *Id.* ¶ 142. He states that these items have disappeared out of his property and that only Christian, Jewish, Muslim, and Native American religious literature was allowed in the SHU. *Id.* ¶¶ 140, 142. He also states that he was not allowed to file grievances regarding his missing property. *Id.* ¶ 144.

Shaw claims that Brent Fluke, Rebecca Schieffer, Alejandro Reyes, Brian Foley, Te Archembeau, Kelly Tjeerdsma, the Secretary of Health, Dr. Melvin Wallinga, Kaemingk, Leidholt, Reisch, Clark, Kellie Wasko,[6] Young, Dan Sullivan, Dreiske, Ponto, Cook, Benting, Mertens-Jones, Warntjes, unknown DOH, CHS, CBM/Summit Food Services defendants,[7] Dr. Mary Carpenter, Dr. Eugene R. Regier, and Dr. Shahim Sultana denied him his religious diet, a suitable medical diet, and all-natural herbal medications and treatments as required by his religious beliefs. *Id.* ¶ 145.

## 2. Freedom of Religion

Shaw alleges that defendants have pressured him to violate his sincerely held religious beliefs. *Id.* ¶ 172. He claims that Fluke, Karl Karberg, Schieffer, Reyes, Lee Kaufenberg, Ed Louie, Jerame Larson, and Joey Gastonguay caused him to be transferred from the Mike Durfee State Prison to the State Penitentiary in retaliation for his filing of Project Applications and grievances.

---

[6] Shaw names Kelly Wasko as a defendant in this lawsuit. Docket 1 ¶ 4. The actual name of the Secretary of Corrections is Kellie Wasko. When referring to Wasko by her full name, this court will use Wasko's actual name.

[7] CBM/Summit Food Services is a private company that has contracted with the state. Thus, it acts under color of state law when providing food services to state inmates and can be sued under § 1983. *See West v. Atkins*, 487 U.S. 42, 56 n.14 (1988).

*Id.* ¶ 173(1). He also claims that Foley placed him in the SHU after he told Foley he would file a lawsuit against him. *Id.* ¶ 173(2). Shaw states that Foley told other inmates interested in DC that they would be labelled as security threats or transferred if they engaged in any DC activities in order to prevent DC from having enough members to become a group. *Id.* ¶ 173(3). He states that Dreiske testified to the court in the previous lawsuit that Shaw could practice DC if he could find a volunteer. *Id.* ¶ 173(4). He also states that Dreiske, Mertens-Jones, and Foley prevented Shaw from finding a volunteer, after which Dreiske admitted that Shaw would not be allowed "to adhere to the laws of DC if he had found a volunteer[.]" *Id.*

Shaw states that Mertens-Jones and Mousel have stolen books mailed to him, donated those books to the State Penitentiary Wicca group, and denied him access to chapel activities including access to the stolen books. *Id.* ¶ 173(6). He states that Dreiske and Mertens-Jones testified to this court that there was no available outdoor space for DC but then provided the Wicca and Asatru groups separate outdoor space for worship. *Id.* ¶ 173(8). He also states that Dreiske and Mertens-Jones, in affidavits, claimed that "all activities approved for other groups would be available for DC." *Id.* ¶ 175. Shaw claims that Dreiske, Mertens-Jones, Foley, Warntjes, and the unknown Global Tellink[8] and Bureau of Information and Telecommunications defendants have denied

---

[8] Global Tellink is a private company that has contracted with the state. Thus, it acts under color of state law when providing technology services to state inmates and can be sued under § 1983. *See West*, 487 U.S. at 56 n.14.

him a Surface Pro laptop and tablet necessary to follow DC, despite allowing similarly situated inmates of other religions laptops and tablets. *See id.* ¶ 183.

Shaw claims that he has been denied his required religious diet of "all natural, farm fresh, organic fruits and vegetables" and "grass-fed, no growth-hormone meats" four times a day. *Id.* ¶ 187. He claims the diet also requires a member of DC to prepare and cook his meals. *Id.* He also claims that Jewish inmates are permitted kosher diets. *Id.* Shaw alleges that the continued denial of his diet has led to him eating as little as possible from November 2018 to May 2019, resulting in him losing 64 pounds, being hospitalized for heart issues and malnutrition, and developing diabetes. *Id.* ¶ 188. He alleges that he is required to celebrate "13 Esbats" and "8 Sabbats" throughout the year with "Ritual and Feast[.]" *Id.* ¶¶ 192-194. He alleges that he has been denied these religious celebrations. *See id.* ¶ 196.

Shaw alleges that his religious beliefs require him to abstain from pharmaceutical medicine and to seek "all natural herbal remedies and treatments[.]" *Id.* ¶ 200. He alleges that he has been prevented from obtaining these remedies and treatments, causing him pain and suffering and preventing him from practicing his religion. *Id.* Shaw states that he is mandated by his religion to "learn and use specific ritual tools" and that "the denial of ritual tools is the equivalent of taking a digit or a limb from [him.]" *Id.* ¶ 201. He states that Dreiske testified in an affidavit that ritual tools available for other religious groups would be available for DC as well. *Id.* He states that Dreiske, Mertens-Jones, Foley, and Warntjes have denied him access to ritual tools that

11

are permitted to similarly situated inmates and religious groups other than DC. *Id.* ¶ 202. He also states that DC requires him to use divination tools, which Dreiske, Mertens-Jones, Foley, and Warntjes have prevented him from using. *Id.* ¶¶ 203-204.

Shaw states that Cody Hanson, Hughes, Archambeau, Timmerman, and Warntjes have burdened his religious exercise by forcing him to live with "non-believers of DC, other [r]aces, [and] those of other [r]eligious [g]roups or [p]eople who live by a different creed" in order to cause confrontations between him and other inmates and to prevent him from practicing his religion in his cell. *Id.* ¶ 208. He states that he learned from Hughes on March 24, 2022, that the DOC had incorrectly classified his religion as an Aryan white power movement and thereafter refused his religious requests. *Id.* ¶ 209. He also states that this is a misinterpretation of his religious beliefs and of the word "Aryan[,]" which he believes is "descriptive of the original Indo-European Tribes/Peoples which includes the Celts, Germans, Balts and Slavs." *Id.*

### 3.    Health Issues and Conditions of Confinement

Shaw claims that he suffers from Type II diabetes and diabetic neuropathy, primary and secondary osteoarthritis, musculoskeletal and sciatica pain, Gastroesophageal Reflux Disease ("GERD"), depression, anxiety (including diagnosed agoraphobia, anxiety disorder due to medical conditions, generalized anxiety disorder, panic disorder, and possibly other "specified and unspecified axiety [sic] disorders or phobias[,]"), insomnia, migraine headaches, and PTSD. *Id.* ¶ 234. He claims that defendants have deprived him of adequate

food and medical care. *Id.* ¶ 237. He also claims that the unknown DOC, DOH, Correctional Health Services, and CBM/Summit Food Services defendants all claim that each other's policies prevent him from accessing all-natural treatments and foods. *Id.* ¶ 239. Shaw alleges that Angela Pechous, Mousel, Warntjes, and other unknown defendants have prevented him from writing to outside doctors to acquire all-natural treatments and recommendations. *Id.* ¶ 241. He alleges that he attempted to send his medical records out and was charged for mail but that Pechous, Mousel, and Warntjes refused to allow him to seek outside medical care, rejected his outgoing mail, failed to return the outgoing mail to him, and then charged him a second time to send the mail to "anyone not a doctor." *Id.* ¶ 242.

Shaw alleges that unknown DOC, DOH, and Correctional Health Services defendants and Hughes have allowed him to be tortured by the conditions of his confinement. *See id.* ¶ 243. Specifically, he alleges that he has been punished by taking his clothes, mattress, pillow, hot food, and toiletries for up to 48 hours. *Id.* ¶ 243(1). He also alleges that his cell is illuminated 24 hours a day. *Id.* ¶ 243(2). Shaw states that unknown defendants "mase [sic] inmates in their cell then refuse to remove or decontaminate the mase [sic] for hours at a time while officers walk around with gas masks on and laugh at [him] struggling to breath [sic]." *Id.* ¶ 243(3). He states that during the COVID-19 outbreak, he was denied showers and the ability to self-quarantine and maintain social distance for extended periods. *Id.* ¶ 245. Shaw claims that he has had to breathe thick dust and clean his cell several times a day during

renovations and construction at the State Penitentiary. *Id.* ¶ 248. He claims that the Secretary of Corrections, Young, and unknown DOH and Correctional Health Services defendants refused to provide ventilation, masks, and ear protection, even though construction workers were provided respirators, eye protection, and ear protection. *Id.* ¶¶ 248-250. He also claims that this caused him respiratory issues, eye irritation, earaches, and headaches. *Id.* ¶¶ 248-249.

Shaw states that Dr. Regier, Dr. Sultana, and Dr. Wallinga often deny or delay necessary treatment, even when that treatment is recommended by outside medical doctors. *Id.* ¶ 252. He states that Dr. Regier, Dr. Sultana, and Dr. Wallinga crush medications that are not supposed to be crushed according to the warning labels and then hide those labels from him to prevent him from learning that this has caused his GERD. *Id.* ¶ 254. He also states that he has been denied all GERD treatments, including requests to see a gastroenterologist, since making allegations regarding crushed medication. *Id.* ¶ 255. Shaw claims that Klawitter filed a false report against him in retaliation for his complaints about her delaying treatment and that this false report caused his pain medications to be crushed. *Id.* ¶ 256. He claims that unknown DOC, DOH, and Correctional Health Services defendants cancelled his physical therapy while he was in the SHU. *Id.* ¶ 253. He also claims that unknown DOC, DOH, and Correctional Health Services defendants refuse to respond to his emergency call light button when he complains of vomiting, lightheadedness, and chest pains. *Id.* ¶ 246.

### 4.    Disability Accommodations

Shaw claims that he is a qualified individual with disabilities as defined by the Americans with Disabilities Act ("ADA") and SDCL § 20-13-1(4). *Id.* ¶ 258-259. He claims that he has been and continues to be excluded from participation in and denied the benefits of "services, programs, activities, accommodations, or was otherwise subjected to discrimination . . . based on [his] Aryan Race, his religion . . . and his disabilities." *Id.* ¶ 260. He also claims that filing grievances regarding this discrimination and retaliation led to further discrimination and retaliation. *Id.* ¶ 262.

Shaw alleges that he has been diagnosed as requiring a no work order, a limited activities order, a medical bed or handicapped cell, a bottom bunk order, an ADA/medical shower, a no stairs order, orthotic shoe inserts, medical shoes, bilateral knee braces, a back brace, a cane, a wheel chair for long distances and recreation, a TENS unit and therabands for physical therapy, double rinsed laundry, a head of bed wedge, an extra pillow, a firm mattress, and ice for medical purposes. *See id.* ¶ 266. He alleges that the schools at the State Penitentiary and the Mike Durfee State Prison are not accessible, preventing him from receiving Earned Discharge Credits by participating in programming. *Id.* ¶ 268. He also alleges that unwritten policies require him to work beyond his physical capabilities and walk up and down stairs in order to receive discharge credits. *Id.* ¶ 269.

Shaw states that Hanson, Badure, E Remfert, Jamie Zoss, and Tjeerdsma, all of whom Shaw alleges are not medical personnel, denied him

15

ADA showers, causing him to fall and injure himself when attempting to shower. *Id.* ¶ 271. He states that he has also fallen and injured himself because he is not in a handicapped cell and his current cell has no railings. *Id.* ¶ 276. He states that he has trouble using the tables, stools, and lockers in his cell because his cell is not accessible. *Id.* ¶¶ 277-278. Shaw claims that Dr. Sultana, Hanson, Hughes, and Warntjes deny him ADA accommodations as punishment for filing grievances and then prevented or deterred him from filing this lawsuit. *Id.* ¶ 279. He claims that Fluke, Schieffer, Reyes, Archambeau, and Warntjes required him to walk miles to get non-religious meals as retaliation and punishment at Mike Durfee State Prison, ultimately escalating into a retaliatory transfer to the State Penitentiary. *Id.* ¶ 280. He also claims that Gastonguay and Bergman took his handicapped items from his room to punish him for filing grievances against them. *Id.* ¶ 284.

### 5. Mail Issues

Shaw claims that on February 2, 2022, he placed an order for over $100 from an art supply catalog approved for inmate orders, and Mousel and Mertens-Jones stole his order as retaliation. *Id.* ¶ 289. He claims that he never received the order or a refund. *Id.* He also claims that Mertens-Jones, Mousel, and Warntjes stole a tarot deck that was mailed to him and that he never received the order or a refund. *Id.* ¶ 290. Shaw alleges that his rejected materials fall under DOC Policy 1.3.C.8, which states that "[p]ublished material containing nudity illustrative of medical, educational, or anthropological content may be excluded from [the definition of obscene materials]." *Id.* ¶¶ 291-

16

292. He alleges that Mertens-Jones only allows him preapproved books and magazines. *Id.* ¶ 297. He also alleges that Mertens-Jones has committed mail fraud by changing return addresses on his outgoing mail and stealing his incoming mail and books. *Id.* ¶ 298.

Shaw alleges that Mertens-Jones, Hughes, Pechous, and Warntjes denied him access to his viewing room file while he was in RH unless he agreed to allow Pechous to discard his magazines. *Id.* ¶ 310. He alleges that he was told that all of his mail would be thrown away if he did not agree. *Id.* He also alleges that he was not allowed to save any rejected mail for litigation. *Id.* ¶ 311.

### 6.    Grievance, Disciplinary, and Court Access Issues

Shaw states that defendants have prevented him from filing grievances and failed to respond to his filed grievances. *E.g.*, *id.* ¶ 62. He states that his grievances are denied out of retaliation and out of a "desire to impede or prevent [him] from getting his claims to the Courts." *Id.* ¶ 320. He also states that Larson, a Mike Durfee State Prison official, has found Shaw guilty of disciplinary infractions "on suspicion instead of actual evidence[,]" has used fabricated disciplinary reports, has punished Shaw for refusing to provide information about other inmates, and has caused retaliatory transfers. *Id.* ¶ 323. Shaw claims that the DOC's "Conduct Which Disrupts" disciplinary report fails to provide clear notice of charges, resulting in transfers or harm to his eligibility for parole. *Id.* ¶ 324. He claims that Gastonguay and Bergman took his legal work, artwork, and pictures in retaliation because Shaw filed grievances. *Id.* ¶ 326.

Shaw claims that the LexisNexis services offered by the DOC to inmates is inadequate. *Id.* ¶ 329. He claims that his research is often monitored and that he is often "kicked out of LexisNexis and unable to log back in." *Id.* ¶ 330. He also claims that Hughes and Pechous often reference his research activities to let him know that they are aware of his attempts to bring lawsuits and that they are impeding these efforts. *Id.* ¶ 331. Shaw alleges that he has been prevented from submitting a supplemental complaint in an ongoing lawsuit, from filing a medical malpractice lawsuit in state court, and from challenging parole eligibility calculations that he believes are inaccurate. *Id.* ¶¶ 332, 334, 336. He alleges that Ekren prevented him from mailing out legal mail. *Id.* ¶ 333. He also alleges that defendants have prevented him from accessing legal materials necessary to pursue his claims. *Id.* ¶ 335.

## B.    Legal Background

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

   **C.    Legal Analysis**

      **1.    Claims Against the DOH, DOC, Correctional Health Services, and the Bureau of Information and Telecommunications**

Construing his claims liberally, Shaw brings claims against the DOH, DOC, Correctional Health Services, and the Bureau of Information and Telecommunications. *See* Docket 1 ¶¶ 32, 35, 37-38. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. *Cory v. White*, 457 U.S.

85, 90-91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines powers created by state law, the degree of autonomy and control, and whether it is funded by the state treasury. *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985).

According to South Dakota statute, the DOC, DOH, and the Bureau of Information and Telecommunications were created by the state legislature. *See* SDCL §§ 1-15-1.2, 34-1-1.1, 1-33-37. Correctional Health Services is a division of the DOH. *See Correctional Health Care*, S.D. Dep't of Health, https://doh.sd.gov/corrections (last visited July 6, 2022). The DOC, DOH, Correctional Health Services, and the Bureau of Information and Telecommunications are arms of the state of South Dakota and, as such, are not subject to suit under § 1983. Shaw's claims against the DOC, DOH, Correctional Health Services, and the Bureau of Information and Telecommunications are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[9]

### 2. Official Capacity Claims for Money Damages

Shaw brings claims against all defendants in their official capacities except Leidholt, Kaemingk, Young, Dreiske, Clark, and Reisch, as new defendants have been substituted for these six defendants in their official capacities under Fed. R. Civ. P. 25(d). *See* Docket 1 ¶ 51. All defendants were

---

[9] To the extent that Shaw brings claims against unnamed DOC, DOH, Correctional Health Services, and Bureau of Information and Telecommunications officers and employees, those claims are not dismissed here.

employees of or contracted with the state of South Dakota at the times in question. *Id.* ¶¶ 4-50. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* Here, Shaw requests both money damages and injunctive relief. The state of South Dakota has not waived its sovereign immunity. Thus, Shaw's claims for money damages against all defendants except Leidholt, Kaemingk, Young, Dreiske, Clark, and Reisch in their official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 3. State-Law Breach of Contract Claims

Shaw alleges that defendants have breached the settlement agreement entered into as a result of his previous lawsuit. Docket 1 ¶¶ 341-343. Further, Shaw alleges that defendants forced him to enter into that agreement under duress in order to prevent further retaliation and that defendants made false promises regarding enforcement of the agreement. *Id.* ¶¶ 63, 68-69, 73, 77, 82-84. Under 28 U.S.C. § 1367(a), this court has supplemental jurisdiction over all other claims that "form part of the same case or controversy" as the civil action

21

over which this court has original jurisdiction. Thus, this court has jurisdiction over Shaw's state-law breach of contract claims.

Shaw alleges facts sufficient to state claims for breach of contract. Under South Dakota law, "[t]he elements of a breach of contract are (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages." *Bowes Constr., Inc. v. S.D. Dep't of Transp.*, 2010 S.D. 99, ¶ 21, 793 N.W.2d 36, 43 (citation omitted). Shaw alleges that defendants have violated terms of the settlement agreement and that these violations have resulted in harm, including restrictions on his ability to practice his religion and retaliation. *See* Docket 1 ¶¶ 65-66. Shaw's state-law breach of contract claims survive § 1915A screening.

### 4. Religious Land Use for Incarcerated Persons Act ("RLUIPA") Claim

Shaw asserts that defendants' actions violate RLUIPA. *See id.* ¶¶ 344-346. RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting 42 U.S.C. § 2000cc-5(7)(A)). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation," and the prisoner must show that the prison policy substantially burdens the prisoner's exercise of religion. *Id.* at 360-61.

To establish a prima facie case under RLUIPA, a plaintiff must show "1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." *Smith v. Allen*, 502 F.3d 1255, 1276 (11th Cir. 2007),

*abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011); *see also* 42 U.S.C. § 2000cc-1(a). If the plaintiff succeeds in making a prima facie showing, the defendant bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest. *Allen*, 502 F.3d at 1276. Because Shaw claims that he has been denied the ability to participate in religious events, his RLUIPA claim survives screening.

### 5.     First Amendment Free Exercise Claim

Shaw claims that defendants have violated his free exercise rights under the First Amendment. Docket 1 ¶¶ 347-349. In order to state a First Amendment free exercise claim, Shaw must allege facts showing that prison officials have substantially burdened the free exercise of his religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). Substantially burdening the free exercise of religion means that the regulation

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a [person's] religion.

*Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (cleaned up). Shaw alleges that defendants have prevented him from freely exercising his religion. Docket 1 ¶ 348. Thus, Shaw's First Amendment free exercise claims survive § 1915A screening.

### 6.    Fourteenth Amendment Equal Protection Claim

Shaw claims that defendants have violated his right to equal protection of the laws under the Fourteenth Amendment. *See id.* ¶¶ 350-352. The equal protection clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike," a protection that applies to prisoners. *Murphy,* 372 F.3d at 984 (quoting *Rouse v. Benton*, 193 F.3d 936, 942 (8th Cir. 1999)). The Eighth Circuit Court of Appeals has explained for a prisoner to prevail on an equal protection claim, he "must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." *Patel*, 515 F.3d at 815 (citations and internal quotation omitted). "Religion is a suspect classification." *Id.* at 816 (citing *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006)).

Here, Shaw alleges that defendants have treated him differently than similarly situated inmates of different religions. Docket 1 ¶ 228. Specifically, he alleges that similarly-situated inmates are allowed to participate in religious activities and exercises that are denied to him. *Id.* ¶¶ 228-231. Thus, Shaw's Fourteenth Amendment equal protection claim survives § 1915A screening.

### 7.    42 U.S.C. § 1985(3) Civil Conspiracy Claim

Shaw brings a civil conspiracy claim under 42 U.S.C. § 1985(3). *Id.* ¶¶ 350-352. To state a claim under 42 U.S.C. § 1985, Shaw must allege

> (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive [him] either directly or indirectly of [his] civil rights; (3) that a conspirator did an act in furtherance of the

24

object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right.

*Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999); *see also Dubray v. Rosebud Hous. Auth.*, 565 F. Supp. 462, 466 (D.S.D. 1983). For § 1985(3) to apply, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971). "[E]vidence of purposeful discrimination must be produced to avoid dismissal of a § 1985(3) claim." *Schmidt v. Louise Big Boy*, 2007 WL 858419, at *10 (D.S.D. Mar. 20, 2007).

Here, Shaw alleges facts sufficient to state a civil conspiracy claim under 42 U.S.C. § 1985(3). He alleges that defendants have "willfully participated in the joint activity" of depriving him of his constitutional rights. *See* Docket 1 ¶ 171. Thus, he alleges both deprivations of civil rights and that defendants conspired to deprive him of those rights. *See id.* He alleges "intentional and purposeful discrimination" on both religious and racial grounds. *Id.* ¶ 230. Shaw's § 1985(3) civil conspiracy claim survives § 1915A screening.

### 8.   First Amendment Establishment Clause Claim

Shaw claims that defendants have violated his rights under the First Amendment Establishment Clause. *Id.* ¶¶ 353-355. "[A]t a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise[.]" *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (citing *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)). In order to have standing to bring an Establishment Clause claim, a plaintiff may either have

standing as a taxpayer or establish "an injury of direct and unwelcome personal contact with the alleged establishment of religion." *Patel*, 515 F.3d at 816 (citations and internal quotation omitted). "Prisoners may establish an injury if they 'allege they altered their behavior and had direct, offensive, and alienating contact with' a government-funded religious program." *Id.* at 817 (quoting *Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.,* 509 F.3d 406, 419 (8th Cir. 2007)).

In *Patel*, the prisoner plaintiff alleged that the defendants only provided a religious diet to Jewish inmates. *Id.* The Eighth Circuit found that because the plaintiff sought accommodations for his own religious beliefs, he could not bring an Establishment Clause claim, as "[a] successful Establishment Clause claim would strike down any accommodation of religious beliefs in the prison's meal plans, which would effectively eviscerate the remedy [the plaintiff] seeks in his complaint." *Id.* Similarly, Shaw seeks accommodation of his own religious beliefs, rather than asking this court to bar defendants from providing religious accommodations. *See* Docket 1 ¶ 375. Thus, Shaw's Establishment Clause claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 9.    **Denial of Medical Care Claims**

Shaw brings claims for denial of medical care. *Id.* ¶¶ 356-358. Construing his complaint liberally, Shaw brings claims for deliberate indifference to serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *See id.*

26

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Estate of Rosenberg*, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily

recognize the necessity for a doctor's attention.' " *Coleman,* 114 F.3d at 784 (quoting *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

Here, Shaw alleges facts sufficient to state a claim for deliberate indifference to serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Shaw alleges that he suffers from several serious medical conditions. Docket 1 ¶ 234. He also alleges that defendants are and have been aware of and deliberately indifferent to his medical needs. *See id.* ¶¶ 236-240. Some of Shaw's claims, such as his desire for all-natural treatments and foods, may be mere disagreement with treatment decisions. *See id.* ¶ 239; *see also Jolly,* 205 F.3d at 1096. But Shaw also alleges that defendants have failed to address medical needs of which they are aware. *See, e.g.,* Docket 1 ¶¶ 146, 253-255 (alleging that defendants ignored warnings from outside doctors that Shaw was at increased risk of coma and death because of his diabetes, that defendants cancelled Shaw's physical therapy in order to punish him, and that defendants worsened Shaw's GERD symptoms by crushing his medication and denying him GERD treatments). Thus, Shaw's Eighth Amendment deliberate indifference to serious medical needs claims survive § 1915A screening.

### 10.   State-Law Medical Malpractice Claim

Shaw brings a claim for state-law medical malpractice. *Id.* ¶¶ 356-358.

This court has supplemental jurisdiction over Shaw's state-law medical

malpractice claim under 28 U.S.C. § 1367(a). "In order to prevail in a suit

based on negligence, a plaintiff must prove duty, breach of that duty,

proximate and factual causation, and actual injury." *Hanson v. Big Stone*

*Therapies, Inc.*, 916 N.W.2d 151, 158 (S.D. 2018) (quoting *Hamilton v.*

*Sommers*, 855 N.W.2d 855, 861 (S.D. 2014)). "In a suit for professional

negligence, the plaintiff must prove that the professional deviated from the

required standard of care." *Id.* (citing *Magbuhat v. Kovarik*, 382 N.W.2d 43, 46

(S.D. 1986)).

Shaw alleges facts sufficient to state a claim for medical malpractice

under South Dakota state law. He alleges that defendants are in charge of his

medical care and owe him a duty, that they failed to provide medical care and

breached that duty, and that he has suffered harm as a result of this breach.

*See* Docket 1 ¶¶ 234, 236-240, 246, 252-257. Thus, Shaw's state-law medical

malpractice claim survives § 1915A screening.

### 11.   Eighth Amendment Conditions of Confinement Claim

Construing his complaint liberally, Shaw brings a claim for conditions of

confinement in violation of his Eighth Amendment right to be free from cruel

and unusual punishment. *Id.* ¶¶ 356-358.

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits

'inhumane ones.' " *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting

29

*Farmer*, 511 U.S. at 832). The United States Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation and internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that: (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities, or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. *See id.*; *see also Tyler v. Black*, 865 F.2d 181, 183 (8th Cir. 1989).

Here, Shaw alleges facts sufficient to state a claim for conditions of confinement in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Shaw alleges that defendants took his clothes, mattress, pillow, hot food, and toiletries, that his cell is illuminated 24 hours a

day, that defendants have used mace on him while he was in his cell, that he was denied showers and safety protocols during the COVID-19 outbreak, and that dust and noise from construction have caused him respiratory issues, eye irritation, earaches, and headaches. Docket 1 ¶¶ 243, 245, 248-250. The cumulative effect of these conditions, as alleged, is sufficiently serious to meet the standard for a constitutional deprivation. *See Simmons*, 154 F.3d at 807. Thus, Shaw's Eighth Amendment conditions of confinement claim survives § 1915A screening.

### 12.  ADA Claims

Shaw brings claims under Title II and Title V of the ADA. *Id.* ¶¶ 359-361. There are various means of discrimination under the ADA, including intentional discrimination, retaliation, and the failure to make reasonable accommodations. *See Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004); *Rinehart v. Weitzell*, 964 F.3d 684, 689 (8th Cir. 2020). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009). To succeed on an intentional discrimination claim or a failure to provide reasonable accommodations claim, Shaw must show:

> (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [penitentiary's] services, programs, or activities, or was otherwise

31

subjected to discrimination by the [penitentiary]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.

*Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010).

Construing his complaint liberally, Shaw brings claims for both intentional discrimination and failure to provide reasonable accommodations under Title II of the ADA. *See* Docket 1 at 359-361. Here, Shaw alleges facts sufficient to state a claim for intentional discrimination under the ADA. Intentional discrimination is also known as disparate treatment. *Peebles*, 354 F.3d at 765. "In disparate treatment cases, a similarly situated disabled individual is treated differently because of his disability than less- or non-disabled individuals. The key element is discriminatory intent." *Id.* at 766 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)). Shaw's diabetes and health conditions render him a qualified individual with a disability. *See* 42 U.S.C. § 12102(1) (defining "disability" under the ADA). Shaw alleges defendants intentionally discriminated against him because of his disability. Docket 1 ¶ 260. Among other allegations, he claims that certain State Penitentiary programming, such as the availability of Earned Discharge Credits through work and education, are intentionally denied to him. *See id.* ¶ 268.  Thus, Shaw's Title II ADA claim for intentional discrimination survives § 1915A screening.

Shaw alleges facts sufficient to state a claim for failure to provide reasonable accommodations under Title II of the ADA. He alleges that he was excluded from obtaining medication and participating in educational programs,

and these are benefits under Title II. *Mason*, 559 F.3d at 886 (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)). In order to show that the exclusion was "by reason of his disability[,]" Shaw need not show that the exclusion was motivated by a discriminatory purpose, only that his exclusion was caused by his disability. *See Layton v. Elder*, 143 F.3d 469, 470-72 (8th Cir. 1998) (finding that wheelchair-using plaintiff had been "excluded . . . because of his disability" when he could not attend a meeting on the inaccessible second floor of the courthouse, even though there was no showing of intent to discriminate). Shaw alleges that defendants have failed to provide him with several ADA accommodations. *E.g.*, Docket 1 ¶¶ 269-280, 284. Thus, Shaw's failure to provide reasonable accommodations claim under Title II of the ADA survives § 1915A screening.

Title V of the ADA prohibits discrimination against "any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA.]" 42 U.S.C. § 12203(a). To succeed on a retaliation claim under the ADA, a plaintiff must establish that "(1) he engaged in statutorily protected activity; (2) adverse action was taken against him; and (3) a causal connection exists between the adverse action and [the] protected activity." *Rinehart*, 964 F.3d at 689. Here, Shaw alleges facts sufficient to state a claim for retaliation in violation of Title V of the ADA. He claims that defendants have further discriminated against him, denied him accommodations, and otherwise

33

punished him for filing grievances and lawsuits alleging violations of his rights

under the ADA. *E.g.*, Docket 1 ¶ 262. Thus, Shaw's retaliation claim under Title

V of the ADA survives § 1915A screening.

### 13. Rehabilitation Act Claims

Shaw brings claims for violations of the Rehabilitation Act. *Id.* ¶¶ 359-

361. Under the Rehabilitation Act,

> [n]o otherwise qualified individual with a disability in the United
> States . . . shall, solely by reason of her or his disability, be excluded
> from the participation in, be denied the benefits of, or be subjected
> to discrimination under any program or activity receiving Federal
> financial assistance or under any program or activity conducted by
> any Executive agency[.]

29 U.S.C. § 794(a).

To establish a prima facie claim under the Rehabilitation Act, the

plaintiff must show that "1) he is a person with a disability as defined by

statute; 2) he is otherwise qualified for the benefit in question; and 3) he was

excluded from the benefit due to discrimination based upon disability."

*Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (explaining that the

Rehabilitation Act follows the same analysis as claims under the Americans

with Disabilities Act but with the additional element that the program or

activity receives federal funding); *see also Gorman v. Bartch*, 152 F.3d 907,

911-12 (8th Cir. 1998). This court has held that the Rehabilitation Act does not

allow individual liability. *See Landman v. Kaemingk*, 2020 WL 3608288, at *2

(D.S.D. July 2, 2020).

Shaw alleges facts sufficient to state claims under the Rehabilitation Act. He alleges that defendants receive federal funding. Docket 1 ¶ 282. But because the Rehabilitation Act does not allow individual liability, Shaw cannot bring Rehabilitation Act claims against individual defendants in their individual capacities. Thus, Shaw's Rehabilitation Act claims against individual defendants in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), but his Rehabilitation Act claims against individual defendants in their official capacities and against all other remaining defendants survive § 1915A.

### 14.   South Dakota Human Relations Act Claim

Shaw brings a claim under the South Dakota Human Relations Act. *See id.* ¶¶ 359-361. This court has supplemental jurisdiction over Shaw's state-law Human Relations Act claim under 28 U.S.C. § 1367(a). Under SDCL § 20-13-24,

> [i]t is an unfair or discriminatory practice for any person engaged in the provision of public services, by reason of . . . religion [or] disability . . . to fail or refuse to provide to any person access to the use of and benefit thereof, or to provide adverse or unequal treatment to any person in connection therewith.

A person "claiming to be aggrieved by a discriminatory or unfair practice may file [a charge] with the Division of Human Rights[.]" SDCL § 20-13-29. The South Dakota Supreme Court has held that "administrative exhaustion with the Division is required with all claims that fall within its jurisdiction." *Landman*, 2020 WL 3608288, at *2 (quoting *O'Brien v. W. Dakota Tech. Inst.*, 670 N.W.2d 924, 928 (S.D. 2003)). Further, "[f]ailure to exhaust administrative

remedies where required is a jurisdictional defect." *Id.* (alteration in original) (quoting *S.D. Bd. of Regents v. Heege*, 428 N.W.2d 535, 539 (S.D. 1988)).

Here, Shaw has made no showing that he has exhausted his administrative remedies with the Division of Human Rights. *See* Docket 1 ¶¶ 258-287. In *Landman*, this court rejected the plaintiff's argument that South Dakota Human Relations Act claims did not need to be "exhaust[ed] administratively within the state beyond DOC exhaustion." *Landman*, 2020 WL 3608288, at *2 (internal quotation omitted). Although Shaw has attempted to exhaust his claim within the DOC through the prison grievance process, he is required to first bring his South Dakota Human Relations Act claim before the Division of Human Rights. *See id.* Thus, Shaw's South Dakota Human Relations Act claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 15.   Right to Receive Mail Claim

Shaw brings a claim for violation of his right to receive mail. Docket 1 ¶¶ 362-364. Construing his complaint liberally, Shaw brings a claim for violation of his First Amendment free speech right to send and receive mail. *See id.* Shaw challenges the State Penitentiary mail policy both facially and as applied. *Id.* ¶ 293.

"The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 125 (1997). "While prisoners retain their

36

constitutional rights, limitations may be placed on the exercise of those rights because of the needs of the penal system." *Kaden v. Slykhuis*, 651 F.3d 966, 968 (8th Cir. 2011) (citing *Turner v Safley*, 482 U.S. 78, 84-85 (1987). In *Turner*, the Supreme Court held that prison rules and restrictions on First Amendment rights are constitutional only "if [they are] reasonably related to legitimate penological interests." 482 U.S. at 89. The Eighth Circuit has applied *Turner*'s four-factor test to prison regulations regarding mail:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Thongvanh v. Thalacker*, 17 F.3d 256, 259 (8th Cir. 1994). This standard applies to both incoming and outgoing mail. *Id.*

Shaw alleges facts sufficient to state a claim for deprivation of his First Amendment free speech right to send and receive mail. He alleges that medical and religious books that should fall under exceptions to the State Penitentiary's obscenity policy are still rejected. Docket 1 ¶¶ 291-292. Further, he alleges that defendants have altered return addresses on his outgoing mail and stolen his incoming mail. *Id.* ¶ 298. Thus, Shaw's First Amendment right to send and receive mail claim survives § 1915A screening.

### 16.   Fourteenth Amendment Procedural Due Process Claims

Shaw brings claims for violation of his Fourteenth Amendment due process rights. *Id.* ¶¶ 365-367. Construing his claim liberally, Shaw alleges

that defendants have violated his procedural due process rights by denying grievances out of retaliation, failing to properly investigate disciplinary issues, failing to provide notice of charges in disciplinary reports, and failing to provide information necessary to challenge disciplinary reports. *Id.* ¶¶ 320, 323-325.

### a. Grievance Process Claim

"While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (holding that a refusal to process grievances alone did not state a constitutional deprivation). In *Buckley*, the Eighth Circuit explained that a prison grievance procedure "is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." *Id.* (internal quotation omitted); *see also King v. Houston*, 556 F. App'x 561, 563 (8th Cir. 2014) (per curiam) (citing *Buckley* for the proposition that "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983").

Here, Shaw alleges that the way grievances are processed or remedied violates his due process rights, but this alone does not rise to the level of a constitutional violation. Thus, Shaw's Fourteenth Amendment procedural due process claim regarding the grievance process is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b.   Disciplinary Hearing Process Claim

The Eighth Circuit has explained that the process due for a prison disciplinary hearing is "advance notice of the violation, an opportunity to be heard, and a written statement of the evidence relied on and the reasons for the disciplinary action." *Holt v. Caspar*, 961 F.2d 1370, 1372 (8th Cir. 1992) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). "It is axiomatic that due process requires fair notice of prohibited conduct before a sanction can be imposed. . . . This principle applies within the prison setting." *Williams v. Nix*, 1 F.3d 712, 716 (8th Cir. 1993) (citations omitted).

Here, Shaw alleges facts sufficient to state a claim for violation of his Fourteenth Amendment procedural due process rights regarding the disciplinary hearing process. He alleges that he has been found guilty of disciplinary infractions without proper evidence and that the DOC does not provide sufficient notice of disciplinary charges. Docket 1 ¶¶ 323-325. Thus, Shaw's Fourteenth Amendment procedural due process claim regarding the disciplinary hearing process survives § 1915A screening.

### 17.   Fourteenth Amendment Substantive Due Process Claim

Shaw brings a claim for violations of his substantive due process rights under the Fourteenth Amendment. *Id.* ¶¶ 365-367. He claims that his case is "truly egregious and extraordinary" and thus involves substantive due process violations. *Id.* ¶ 322.

In order for Shaw to establish a substantive due process violation, he must allege "(1) that the official violated one or more fundamental

39

constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." *Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007) (citations and internal quotation omitted). "[F]undamental rights are those 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.' " *Id.* (quoting *Terrell v. Larson*, 396 F.3d 975, 978 n.1 (8th Cir. 2005) (en banc)). "[T]he state action must be 'truly egregious and extraordinary' to shock the conscience . . . ." *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012) (quoting *Winslow v. Smith*, 696 F.3d 716, 735-36 (8th Cir. 2012)). "Whether conduct shocks the conscience is a question of law." *Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir. 2013) (citing *Terrell*, 396 F.3d at 981).

> Because a wide variety of official conduct may cause injury, a court must first determine the level of culpability the § 1983 plaintiff must prove to establish that the defendant's conduct may be conscience shocking. Mere negligence is never sufficient. Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold. The deliberate indifference standard is sensibly employed only when actual deliberation is practical. By contrast, the intent-to-harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.

*Id.* at 980-81 (cleaned up).

Shaw has alleged sufficient facts to state a claim for violation of his substantive due process rights. The incidents described by Shaw are not "rabidly evolving, fluid, and dangerous situations" but instead those where "actual deliberation is practical." *See id.* at 981 (quoting *Terrell*, 396 F.3d at

978). As such, the deliberate indifference standard applies to Shaw's substantive due process claims. Although the incidents alleged, taken individually, may not rise to the level of conscience shocking, this court cannot say that they do not reach that level cumulatively. Thus, Shaw's Fourteenth Amendment substantive due process claim survives § 1915A screening.

### 18.   First Amendment Right to Access the Courts Claims

Shaw brings claims for violation of his First Amendment right to access the courts. Docket 1 ¶¶ 368-370. He claims that defendants have thrown away his legal work, prevented him from filing grievances, provided inadequate legal assistance through the available technology, monitored his legal research, prevented him from filing lawsuits, prevented him from mailing legal mail, prevented him from accessing legal materials, and prevented him from challenging his parole eligibility. *Id.* ¶¶ 326, 328-337. "The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v. Missouri,* 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Casey*, 518 U.S. at 353).

Shaw alleges facts sufficient to state claims for violation of his First Amendment right to access the courts. Specifically, he alleges that defendants'

actions prevented him from filing a supplemental complaint in his previous federal lawsuits, from filing a medical malpractice suit in state court, and from challenging his parole eligibility. Docket 1 ¶¶ 332, 334, 336. Thus, he alleges actual injuries under *Johnson*. *See* 142 F.3d at 1089. Shaw's First Amendment access to the courts claims survive § 1915A screening.

### 19.   First Amendment Retaliation Claims

Shaw claims that defendants have retaliated against him in violation of his First Amendment rights. *Id.* ¶¶ 371-373. He claims that all of defendants' alleged actions were retaliation against him for attempting to "grievance and litigate these claims[.]" *Id.* ¶ 372.

To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." *Revels*, 382 F.3d at 876. "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994).

Shaw alleges facts sufficient to state First Amendment retaliation claims. Prison grievances and inmate lawsuits are protected activities under *Jacks*. *Id.*

42

The adverse actions alleged by Shaw, including restriction of his ability to exercise his religion and refusal to treat medical issues, would chill a person of ordinary firmness from continuing to file grievances and lawsuits. *See, e.g.*, Docket 1 ¶¶ 173-174, 237. Shaw alleges that these adverse actions were motivated by his attempts to file grievances and lawsuits. *Id.* ¶ 372. Thus, Shaw's First Amendment retaliation claims survive § 1915A screening.

Thus, it is ORDERED:

1.   That Shaw's claims against the DOH, DOC, Correctional Health Services, and the Bureau of Information and Telecommunications are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). This does not include Shaw's claims against officers and employees of the DOH, DOC, Correctional Health Services, and the Bureau of Information and Telecommunications.

2.   That Shaw's official capacity claims for money damages against all defendants except Leidholt, Kaemingk, Young, Dreiske, Clark, and Reisch are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

3.   That Shaw's state-law breach of contract claims against all defendants survive § 1915A screening.

4.   That Shaw's RLUIPA claim against all defendants survives § 1915A screening.

5.   That Shaw's First Amendment free exercise claim against all defendants survives § 1915A screening.

6.    That Shaw's Fourteenth Amendment equal protection claim against all defendants survives § 1915A screening.

7.    That Shaw's 42 U.S.C. § 1985(3) civil conspiracy claim against all defendants survives § 1915A screening.

8.    That Shaw's First Amendment Establishment Clause claim against all defendants is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

9.    That Shaw's Eighth Amendment deliberate indifference to serious medical needs claims against all defendants survive § 1915A screening.

10.   That Shaw's state-law medical malpractice claim against all defendants survives § 1915A screening.

11.   That Shaw's Eighth Amendment conditions of confinement claim against all defendants survives § 1915A screening.

12.   That Shaw's ADA claims against all defendants survive § 1915A screening.

13.   That Shaw's Rehabilitation act claims against all defendants survive § 1915A screening.

14.   That Shaw's South Dakota Human Relations Act claim against all defendants is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

15.   That Shaw's First Amendment free speech right to send and receive mail claim against all defendants survives § 1915A screening.

16.    That Shaw's Fourteenth Amendment procedural due process claim regarding the grievance process against all defendants is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

17.    That Shaw's Fourteenth Amendment procedural due process claim regarding the disciplinary hearing process against all defendants survives § 1915A screening.

18.    That Shaw's Fourteenth Amendment substantive due process claim against all defendants survives § 1915A screening.

19.    That Shaw's First Amendment access to the courts claims against all defendants survive § 1915A screening.

20.    That Shaw's First Amendment retaliation claims against all defendants survive § 1915A screening.

21.    That the Clerk shall send blank summons forms and Marshal Service Forms (Form USM-285) to Shaw so that he may cause the complaint to be served upon defendants Wasko, Sullivan, Fluke, Ponto, Karberg, Schieffer, Cook, Benting, Reyes, Mertens-Jones, Foley, Mousel, Badure, Hanson, Hughes, Archambeau, Ekren, Zoss, Remfert, Timmerman, Tjeerdsma, Kaufenberg, Louie, Larson, Anderson, Gastonguay, Bergman, Warntjes, Unknown DOC Agents, Administrators and employees, Unknown Marlin's Inc. d/b/a CMB Management d/b/a Summit Food Services Catering Owner(s) and Manager(s), Unknown Global Tellink Corporation Owner(s),

Manager(s), Employees and/or Representative(s), Unknown Bureau of Information and Telecommunications Owner(s), Manager(s), Employee(s) and/or Representative(s), the Secretary of Health, Unknown Department of Health Directors and/or Officers, Unknown Correctional Health Services employees, Dr. Carpenter, Dr. Regier, Dr. Sultana, Dr. Wallinga, Klawitter, Unknown SD Board of Pardons and Paroles agents and/or members, Leidholt, Kaemingk, Young, Drieske, Klemik, Pechous, Clark, and Reisch.

22.     That Shaw shall complete and send the Clerk of Court a separate summons and USM-285 form for defendants Wasko, Sullivan, Fluke, Ponto, Karberg, Schieffer, Cook, Benting, Reyes, Mertens-Jones, Foley, Mousel, Badure, Hanson, Hughes, Archambeau, Ekren, Zoss, Remfert, Timmerman, Tjeerdsma, Kaufenberg, Louie, Larson, Anderson, Gastonguay, Bergman, Warntjes, Unknown DOC Agents, Administrators and employees, Unknown Marlin's Inc. d/b/a CMB Management d/b/a Summit Food Services Catering Owner(s) and Manager(s), Unknown Global Tellink Corporation Owner(s), Manager(s), Employees and/or Representative(s), Unknown Bureau of Information and Telecommunications Owner(s), Manager(s), Employee(s) and/or Representative(s), the Secretary of Health, Unknown Department of Health Directors and/or Officers, Unknown Correctional Health Services employees, Dr. Carpenter, Dr. Regier, Dr. Sultana, Dr. Wallinga, Klawitter, Unknown SD Board

of Pardons and Paroles agents and/or members, Leidholt, Kaemingk, Young, Drieske, Klemik, Pechous, Clark, and Reisch. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 forms are not submitted as directed, the complaint may be dismissed.

23. The United States Marshal Service shall serve the completed summons, together with a copy of the complaint (Docket 1) and this order, upon defendants Wasko, Sullivan, Fluke, Ponto, Karberg, Schieffer, Cook, Benting, Reyes, Mertens-Jones, Foley, Mousel, Badure, Hanson, Hughes, Archambeau, Ekren, Zoss, Remfert, Timmerman, Tjeerdsma, Kaufenberg, Louie, Larson, Anderson, Gastonguay, Bergman, Warntjes, Unknown DOC Agents, Administrators and employees, Unknown Marlin's Inc. d/b/a CMB Management d/b/a Summit Food Services Catering Owner(s) and Manager(s), Unknown Global Tellink Corporation Owner(s), Manager(s), Employees and/or Representative(s), Unknown Bureau of Information and Telecommunications Owner(s), Manager(s), Employee(s) and/or Representative(s), the Secretary of Health, Unknown Department of Health Directors and/or Officers, Unknown Correctional Health Services employees, Dr. Carpenter, Dr. Regier, Dr. Sultana, Dr. Wallinga, Klawitter, Unknown SD Board

of Pardons and Paroles agents and/or members, Leidholt, Kaemingk, Young, Drieske, Klemik, Pechous, Clark, and Reisch.

24. Defendants Wasko, Sullivan, Fluke, Ponto, Karberg, Schieffer, Cook, Benting, Reyes, Mertens-Jones, Foley, Mousel, Badure, Hanson, Hughes, Archambeau, Ekren, Zoss, Remfert, Timmerman, Tjeersdma, Kaufenberg, Louie, Larson, Anderson, Gastonguay, Bergman, Warntjes, Unknown DOC Agents, Administrators and employees, Unknown Marlin's Inc. d/b/a CMB Management d/b/a Summit Food Services Catering Owner(s) and Manager(s), Unknown Global Tellink Corporation Owner(s), Manager(s), Employees and/or Representative(s), Unknown Bureau of Information and Telecommunications Owner(s), Manager(s), Employee(s) and/or Representative(s), the Secretary of Health, Unknown Department of Health Directors and/or Officers, Unknown Correctional Health Services employees, Dr. Carpenter, Dr. Regier, Dr. Sultana, Dr. Wallinga, Klawitter, Unknown SD Board of Pardons and Paroles agents and/or members, Leidholt, Kaemingk, Young, Drieske, Klemik, Pechous, Clark, and Reisch will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

25.     Shaw will keep the court informed of his current address at all times.

All parties are bound by the Federal Rules of Civil Procedure and by

the court's Local Rules while this case is pending.

Dated August 16, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE